Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bassil Madanat, Bar No. 285280
bassil@ruttenbergiplaw.com
RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
*Attorneys for Plaintiff*

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

j2 WEB SERVICES, INC.,
*a Delaware Corporation,*

Plaintiff,

v.

MITEL NETWORKS CORPORATION,
*a Canadian Corporation,*

and

MITEL (DELAWARE), INC.
*a Delaware Corporation*

Defendants.

CASE NO.: 15-cv-4877-BRO-FFM

**FINAL JUDGMENT OF PERMANENT INJUNCTION**

# FINAL JUDGMENT OF PERMANENT INJUNCTION

Plaintiff j2 Web Services, Inc. j2 filed a Complaint against Mitel Networks Corporation and Mitel (Delaware), Inc. (collectively, "Mitel") on June 26, 2015, seeking a permanent injunction and other relief.

Mitel consents to entry of this Final Judgment of Permanent Injunction.

Now, therefore, it is accordingly ORDERED, ADJUDGED and DECREED as follows:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

2. This Court has personal jurisdiction over Mitel.

3. Venue is proper in this District.

## Stipulated Facts

4. j2 is the owner of the following registered United States trademarks:

- United States Trademark Registration No. 2,836,857 (the "'857 Registration") for the standard character mark ONEBOX in connection with the following: Telecommunications services, namely, the transmission of voice, data, images, video and messages over the Internet;
- United States Trademark Registration No. 4,048,389 (the "'389 Registration") for the standard character mark ONEBOX in connection with the following: Computer software for use in sending and receiving facsimiles, accessing voice mail, and managing and coordinating messages in the field of messaging; computer software for use in data, voice and email communications, namely, software for use in transmitting data, voice and email via computer and telecommunications networks; computer software for use in integration, transmission, retrieval and storage of documents, messages, audio text

and/or images; computer software used for email, voice communication, web and Internet security; data, document and email storage and archiving software; and communications software for use in document conversion in the field of messaging; and

- United States Trademark Registration No. 4,048,390 (the "'390 Registration") for the standard character mark ONEBOX UNIFIED MESSAGING in connection with the following: Telecommunication services, namely personal communication services; electronic transmission of messages and data transmission of sound, video and information; data transmission and reception service via telecommunication means; electronic exchange of voice, data, and graphics accessible via computer and telecommunication networks; instant messaging services; voice over ip (VOIP) services; video and audio conferencing services conducted via the web, telephone, and mobile devices; communications by computer terminals; and telephone communications services;

5. The '857, '389 and '390 Registrations are valid and subsisting.

6. ONEBOX® and ONEBOX UNIFIED MESSAGING® identify j2 as the source of the goods and services recited in '857, '389 and '390 Registrations and are not generic.

7. j2 and/or its predecessors-in-interest have marketed unified messaging and communications services under the ONEBOX® mark since at least the late 1990s.

8. j2 and/or its predecessors-in-interest have marketed computer software, including unified messaging and communications services software under the ONEBOX® mark since at least 2009.

9. j2 and/or its predecessors-in-interest have marketed unified messaging and communications services under the ONEBOX UNIFIED MESSAGING® mark since at least 2002.

10. j2 and/or its predecessors-in-interest have marketed unified messaging and communications services through the www.onebox.com website since the late 1990s.

Terms of Permanent Injunction

11. Mitel and each of its officers, directors, stockholders, owners, agents, representatives, employees, affiliates, related entities, and all those acting in concert or privity with it who receive actual notice of this Order by personal service or otherwise, as well as any successors-in-interest (collectively, "Mitel Parties"), are RESTRAINED and ENJOINED in the United States from using j2's ONEBOX® and/or ONEBOX UNIFIED MESSAGING® marks, in any form or stylization, or any other similar mark that is likely to cause confusion, deception or mistake as to source, sponsorship or affiliation with j2.

12. The Mitel Parties are RESTRAINED and ENJOINED from using or creating any false designation of origin or false impression of association, including using j2's ONEBOX® and/or ONEBOX UNIFIED MESSAGING® marks, or any similar mark, name or source indicia, in connection with unified messaging, unified communications or telecommunications products or services, and any other goods or services, that can, or are likely to, lead the public to believe that such goods or services are in any manner associated or connected with j2, or are licensed, approved, authorized or authenticated in any way by j2.

13. The Mitel Parties are RESTRAINED and ENJOINED from making, using, offering to sell, importing, or distributing any unified messaging, unified communications or telecommunications products or services under the names "OneBox" or "OneBox Unified Messaging" (or under similar names) in the United States or in a manner that substantially affects commerce in the United States.

14. The Mitel Parties are RESTRAINED and ENJOINED from marketing, selling, advertising, or promoting any product or service using the ONEBOX® and/or ONEBOX UNIFIED MESSAGING® marks in the United States or in a manner that substantially affects commerce in the United States.

15. The Mitel Parties are RESTRAINED and ENJOINED from using the ONEBOX® and/or ONEBOX UNIFIED MESSAGING® marks within website source code in the United States or in a manner that substantially affects commerce in the United States.

16. The Mitel Parties are RESTRAINED and ENJOINED from use or display on any webpage (including as the title of any web page) or any advertising links to other websites, from search engines' databases or cache memory, and in any other form of use of such terms that is visible to a computer user or serves to direct computer searches to websites registered, owned, or operated by Mitel, including the Internet websites operating under the domain names used and controlled by Mitel, such that the use is visible to consumers in the United States.

17. The Mitel Parties are RESTRAINED and ENJOINED from offering a ONEBOX® or ONEBOX UNIFIED MESSAGING® mobile application anywhere in the United States or in a manner that substantially affects commerce in the United States.

18. The Mitel Parties shall remove and discontinue all mobile applications that use the name "OneBox" or any similar mark in the United States or in a manner that substantially affects commerce in the United States. The Mitel Parties shall remove and discontinue such mobile applications on any and all platforms, including without limitation on the iPhone, Android and Blackberry platforms in the United States or in a manner that substantially affects commerce in the United States. Without limitation, the Mitel Parties shall remove and discontinue all such mobile applications marketed as the "Mitel OneBox" or "Aastra OneBox." Once these have been removed and/or discontinued, the Mitel Parties shall not resume the mobile applications.

19. The Mitel Parties shall remove and discontinue any and all websites that use "onebox" in the uniform resource locator ("URL") and/or uniform resource identifier ("URI") in the United States or in a manner that substantially affects commerce in the United States. Without limitation, the Mitel Parties shall remove and

discontinue the www.mitel.com/onebox and www.aastra.com/onebox web pages and/or make sure that such pages are not available in the United States or in a manner that substantially affects commerce in the United States. Once removed, the Mitel Parties shall not resume use of these web pages in conjunction with unified messaging, unified communications or telecommunications products or services in the United States or in a manner that substantially affects commerce in the United States.

20. The Mitel Parties shall discontinue the use of any and all brochures, advertising, websites and/or any other sales or marketing materials or using the names "OneBox" and/or "OneBox Unified Messaging" (or similar marks) in conjunction with unified messaging, unified communications or telecommunications products or services in the United States or in a manner that substantially affects commerce in the United States.

21. The Mitel Parties shall remove any U.S. contact information from any and all brochures, advertising, websites and/or any other sales or marketing materials using the names "OneBox" and/or "OneBox Unified Messaging" (or similar marks) in conjunction with unified messaging, unified communications or telecommunications products or services.

22. The Mitel Parties shall not conduct any sales or marketing for unified messaging, unified communications or telecommunications products or services under the "OneBox" and/or "OneBox Unified Messaging" names (or similar marks) in the United States or in a manner that substantially affects commerce in the United States.

23. The Mitel Parties shall not register or bid on the ONEBOX® or ONEBOX UNIFIED MESSAGING® trademarks, whether individually or together with other trademarked or non-trademarked terms of j2, as a trademark or key word on any Internet or other search engine. The Mitel Parties shall also not instruct, cooperate with or otherwise cause a third party to do any of the foregoing.

24. Mitel shall circulate a Memorandum to all of its United States distributors and sales personnel, in substantially the form set forth in Exhibit A, notifying the

distributors and personnel that Mitel does not offer any products or services under the "OneBox" or "OneBox Unified Messaging" (or similar) names.

25. Within two business days of the Court's entry of this Order, Mitel shall provide j2 with a statement verifying under oath, based upon personal knowledge or information and belief, the volume of historical sales in the United States of Mitel products and services sold under the "OneBox" (or similar) brand, and any revenue derived therefrom. If Mitel's total historical sales in the United States of Mitel products and services sold under the "OneBox" (or similar) brand has been less than $10,000, a sworn statement under oath to that effect would satisfy Mitel's obligation under this paragraph.

26. The Mitel Parties shall use commercially reasonable efforts to ensure that their distributors, as well as any officers, directors, stockholders, owners, agents, representatives, employees, affiliates, related entities, and all those acting in concert or privity, and successors of any of the foregoing, receive actual notice of this Order and otherwise assist in compliance with the terms of this Order.

Damages, Costs and Attorneys Fees

27. The Court does not award any damages.

28. Each party shall bear its own costs and attorneys' fees.

* * *

There being no just reason for delay, the Clerk is directed to enter this Final Judgment forthwith.

IT IS SO ORDERED.

DATED: July 24, 2015

By: ______________________________

United States District Court Judge